HUGH DAVIS v. THE STATE.

No. 10307.   Delivered January 12, 1927.

Rehearing denied June 22, 1927.

1.—Murder—Judgment of Conviction of Deceased—Not Properly Certified.

Where appellant offered in evidence a purported copy of a judgment convicting the deceased of robbery in Foard County, Kansas, said judgment not being certified in compliance with law, was properly rejected. See Walker v. State, 141 S. W. 243, U. S. Rev. Stats., Secs. 1519-1520.

**2.—Same—Charge of Court—On Defensive Theory—Held Correct.**

Where, on a trial for murder, the court affirmatively charged the jury on the defensive theory of the appellant embracing those facts presented by the evidence, no error is shown.

**3.—Same—Continued.**

The court also correctly submitted to the jury appellant's right to defend against a reasonable expectation of death or serious bodily injury to himself or his two brothers, or either of them, and if they found deceased had threatened appellant to view the surroundings from his standpoint, if they found deceased by some act then done manifested an intention to execute such threat.

**4.—Same—Charge of Court—Exceptions To—Must Be Specific.**

An exception to a charge of the court that the same, as a whole, or that some paragraph of same is "too burdensome" cannot be considered, because such exception is not specific in pointing out the error complained of.

**5.—Same—Charge of Court—On Principals—Held Correct.**

Where the court charged the jury that one is a principal, who without justification or extenuation, and with malice aforethought, kills a human being, and the accused being present, and knowing the unlawful purpose of the slayer, aids him by acts, or encourages him by words or gestures to do such killing, this charge correctly presented the law of principals. It was not necessary to charge that appellant, in this case, must have acted on his own malice aforethought.

**6.—Same—Charge of Court—Considered in Its Entirety.**

A charge is considered on appeal in its entirety, and when criticisms are directed to certain paragraphs that are obviated by other instructions given, no error is presented. The court in this case explicitly told the jury that the killing must have been done upon malice aforethought. Distinguishing Grant v. State, 132 S. W. 352.

Appeal from the District Court of Wilbarger County. Tried below before the Hon. Robert Cole, Judge.

Appeal from a conviction of murder, penalty thirty-five years in the penitentiary.

The opinion states the case.

*J. Ross Bell* of Paducah, for appellant.

*Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

BETHEA, JUDGE.—The appellant was convicted in the District Court of Wilbarger County on a change of venue from

Foard County of the offense of murder and his punishment assessed at thirty years in the penitentiary.

The theory of the state, briefly stated, is as follows:

One W. A. Smith and the deceased, Harry Grady, had been picking cotton for the appellant and on the day of the killing appellant paid them off. After they were paid off, Jess Davis, Owen Davis and the appellant, at the muzzle of a shotgun, forced the said Smith and the deceased into the house where they were living and robbed Smith and the deceased of their money. After they had robbed them of their money, Jess Davis, a brother of the appellant, killed deceased by shooting him with the shotgun, and the witness Smith escaped.

The theory of the appellant was that the fight started over a game of cards; that the deceased reached for his hip and said "I will kill the sons of bitches," whereupon the said Jess Davis shot the deceased, claiming that he shot him in self-defense, the appellant being present at the time of the killing.

Appellant claims in his bill of exceptions No. 2 that the court erred in not allowing him to introduce a certified copy of the judgment and sentence of the trial court of Ford County, Kansas, showing that deceased had been convicted and sentenced for the offense of robbery. We are unable to agree with the contention of the appellant. The record discloses that the judgment offered in evidence was only certified to by the clerk of the District Court of Ford County, Kansas. This does not comply with the Act of Congress known as the "full faith and credit Act." It must be proven up as required by this law before it would be admissible. Walker v. State, 141 S. W. 243. Rev. Stats. U. S., Secs. 1519 and 1520. (U. S. Comp. St. 1913, pp. 647 and 648.)

Appellant's bills of exceptions Nos. 3, 4, 5 and 6 show no error as presented.

We have examined the facts very carefully and find the same amply sufficient to support the verdict of the jury. The verdict is affirmed.

<em>Affirmed.</em>

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The state's theory of this killing was that appellant and his brothers, intending to rob and murder

deceased Grady and witness Smith, made a combined attack upon the two men—Jess Davis and Owen Davis attacking Smith, and this appellant holding a shotgun upon deceased while the other two men were taking from Smith his money; that after they had done so appellant handed the shotgun to his brother, Jess Davis, and told him to kill both deceased and Smith; that Jess Davis took the gun, and while deceased was sitting on a trunk and doing nothing, Jess Davis shot and killed him. Smith testified for the state, and said that in the struggle with Jess Davis and Owen Davis, which resulted in their finally taking from him his money, his clothing were badly torn and all the buttons pulled off his clothes, and they loosened the hair on his head and otherwise injured him. He testified that this appellant held the gun on deceased while Jess and Owen Davis were taking witness' money. That after they had gotten it away from him, Hugh Davis (appellant) handed the gun to his brother Jess and told him to kill both of them; that Jess took the gun and pointed it at deceased, who was sitting on a trunk holding his money in his hand, and that Jess then threatened to kill deceased, who told him to shoot, or words to that effect; and that Jess pulled the trigger and deceased was instantly killed, his body remaining in an upright position on the trunk, still holding his hat in one hand and his money in the other. Witnesses who saw Smith first after he left the house corroborated him as to his appearance, that all the buttons were torn from his clothing, and that his hair was loosened in his head; others swore that the body of Grady was sitting on the trunk, his hat in one hand and his money in the other, and that he was shot in the head with a shotgun. The theory of the defense was that following a game of cards and the drinking of liquor, Smith and deceased, who were losers in the game, grabbed the money, and that Jess and Owen Davis had a struggle with Smith to retake the money which he had grabbed, at the conclusion of which struggle deceased, still holding the money which he had taken, threw his hand back to his hip and threatened to kill all the Davises, whereupon Jess Davis caught up the shotgun and killed deceased in self-defense.

Appellant insists that the charge of the court was erroneous in paragraph 20. In same the jury were told that if they found from the evidence, or had a reasonable doubt thereof, that at the time of the homicide or just prior thereto deceased Grady had taken money belonging to Jess Davis, etc., and that immediately thereupon deceased made an attempt to draw a pistol from his pocket, and that Jess Davis shot and killed deceased—

they should find this appellant not guilty. Appellant was the only eye-witness to the killing who swore for the defense. He swore as follows:

"Owen jumped up to take the money away from Smith and Jess jumped in to help him take it away from him. When Jess jumped in, Grady grabbed Jess' money and was going to get away with it. * * * He changed the money and hat into his left hand and reached for his hip and said, 'I will kill every son-of-a-bitch.' Then Jess grabbed the gun and shot him. Smith jumped out over the bed and went out of the house."

We have quoted this so that it might plainly appear that the learned trial judge, in that part of the charge complained of, was giving to the jury an affirmative charge presenting the defensive theory as made by the testimony. As we read this record, the charge followed almost literally the testimony of appellant. It is as if the court had said: If you believe Grady grabbed Jess' money and was going to get away with it—and that he changed the money to his left hand and reached for his hip, and that Jess then grabbed the gun and shot him, you will acquit. No other defensive theory appears from the testimony, and had the trial court not given an affirmative presentation of the law applicable to said testimony as given by appellant, we might have been compelled to reverse this case. The charge referred to is necessarily based on the assumption that the jury, in order to acquit on this issue, must accept as true the defense testimony raising it. There was no exception to said paragraph on the ground that same did not submit any defensive issue of self-defense against apparent danger.

The court told the jury in paragraph 24 that if they believed, or had a reasonable doubt thereof, that deceased by words or acts, or both, was doing anything which led Hugh Davis, Jess Davis or Owen Davis, or any of them, to have a reasonable expectation that the life of either of them was in danger, then Jess Davis had the right to shoot deceased, and they should acquit. So, also, paragraph 25 of the charge fully submitted the right of Jess Davis to kill, if he believed that deceased had threatened his life or to do him serious bodily injury, and that at the time of the homicide it reasonably appeared to said Jess Davis, viewed from his standpoint, that deceased by some act then done manifested an intention to execute such threat.

Complaint is made that the charge groups these defensive facts in said paragraph 20. We find no such exception to the charge for this reason, as is required in Art. 666, C. C. P. An exception to a charge that the same as a whole, or that some paragraph

of same, is "too burdensome," could not be considered because not specific, and pointing out no error.

It is argued that the use of the word "immediately" in paragraph 20 of the charge, wherein the court told the jury that if the deceased took money of Jess Davis, etc., and that "immediately" thereupon deceased made an attempt to draw a pistol, was not proper; the contention being that, according to appellant's testimony, deceased did not make the movement to get a pistol until the conclusion of a fight between Jess Davis and witness Smith, and that it was at least thirty minutes after Grady had taken the money before he made the movement to draw a pistol. We find nothing in the record to justify any inference that the fight, if any, between Smith and Jess Davis lasted any certain limit, or that the jury could have been misled by the use of the word "immediately" in the charge. We find no exception anywhere reserved to the use of said word in that **connection.**

The law of principals, as applied to murder, is met when the facts show that one, without justification or extenuation, and upon malice aforethought, kills a human being, and the accused being present and knowing the unlawful purpose of the slayer, aids him by acts or encourages him by words or gestures to do such killing. Appellant is wrong in his contention that the court's charge setting forth the above principle was not sufficient, and that it should have gone further and told the jury that appellant could not be convicted under the facts in this case unless he acted upon his own malice aforethought. The cases cited, viz.: Grant v. State, 132 S. W. 352; Oates v. State, 103 S. W. 859, and Pharr v. State, 7 Tex. Crim. App. 472, have no application. There was no exception to paragraph 12 upon the ground that it did not tell the jury that the killing must have been upon malice aforethought. We look to the charge as a whole and find in other parts of same where the jury were explicitly told that the killing must have been upon malice aforethought.

We have gone over as carefully as we can each contention made, and being unable to agree with any of them, the motion for rehearing will be overruled.

*Overruled.*